UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
JOYCE DUCK,

      Plaintiff,      **MEMORANDUM OF**
                **DECISION AND ORDER**
                07CV2224 (ADS) (WDW)

 -against-


PORT JEFFERSON SCHOOL DISTRICT,
EDWARD REILLY, in his former official
capacity as Superintendent of Schools for the
Port Jefferson School District



       Defendant.
----------------------------------------------------------X

**APPEARANCES**

**DELVIS MELENDEZ, ESQ.**
Attorney for the Plaintiff
90 Bradley Street
Brentwood, NY 11717

**CRUSER MITCHELL & NOVITZ, LLP**
Attorneys for the Defendants
175 Pinelawn Road
Suite 301
Melville, NY 11747
  By: Rondiene Erin Novitz, Esq.
     Keith V. Tola, Esq., Of Counsel

**SPATT, District Judge:**

### I. BACKGROUND

The plaintiff, Joyce Duck ("Duck"), moves pursuant to FED. R. CIV. P. 72(a) to object to the denial of her motion to compel discovery by United States Magistrate Judge William D. Wall. The plaintiff seeks discovery of the personnel files of certain employees and the former Superintendent of the Port Jefferson School District.

This action arises out of the plaintiff's employment as a physical education instructor at the Port Jefferson School District (the "District"). The plaintiff's main contention is that she was denied the opportunity to coach the Port Jefferson Middle School Girls Field Hockey Team as a result of discrimination on the basis of her age and gender in violation of the Age Discrimination in Employment Act ("ADEA"), Title VII, and 42 U.S.C. § 1983.

The plaintiff states that since her employment with District began in 1971, she was largely responsible for the development of intramural and interscholastic girls athletic programs. In addition, she states that during her tenure she coached a variety of girls sports teams. Duck retired from teaching in June of 2002. In September 2004, she received a call from an Assistant to the Varsity Field Hockey Coach advising her of an open position as coach of the Middle School Girls Field Hockey Team. Duck alleges that she agreed to take the position, but when then Superintendent Reilly refused to recommend her, she was denied the position. The

defendants contend that Duck was not discriminated against. Instead, they assert that she was not awarded the position because she did not formally apply; preference must be given to teachers already employed by the school District, and Britt and Pennino, the persons receiving the position that Duck sought had already been recruited by the District.

The defendants have provided a list of coaching staff for the 2004/05 school year and the plaintiff now seeks the personnel files of ceratin coaches employed by the District. The plaintiff contends that these personnel files are discoverable as they belong to employees similarly situated to the plaintiff because the individuals (1) held or applied for the coaching position in question; (2) are retired male coaches who were allowed to coach; (3) and/or are out of district male personnel who were offered coaching positions.

On September 13, 2007, Judge Wall adopted a discovery plan that contemplated completion of all discovery by June 30, 2008 and a final pretrial conference before him on July 22, 2008. On December 7, 2007, Duck moved to compel the production of the personnel files for the above categories of individuals. In her motion, the plaintiff represented that she offered to enter into a confidentiality agreement with respect to the information contained in the personnel files, but the defendants rejected this remedial measure.

On December 19, 2007, Judge Wall held oral argument on the plaintiff's motion. At the hearing, Judge Wall denied the motion to compel "to the extent that the personnel files demanded are protected from disclosure." (Discovery Order, December 19, 2007). The plaintiff filed the present motion pursuant to FED. R. CIV. P. 72(a), objecting to Judge Wall's ruling.

The defendants contend that Judge Wall properly excluded discovery of these documents because the employees whose personnel records the plaintiff seeks are not similarly situated to the plaintiff, and, therefore, are not proper comparators to her. The defendants assert that the only people similarly situated to the plaintiff would be those employed by the District for the sole purpose of coaching a middle school team. Even then, the defendants assert, the class of people similarly situated to the plaintiff would be those who obtained the position years after retirement and without formally applying. Therefore, the defendants contend that Judge Wall committed no legal error when he determined that the documents requested were not relevant.

## II. DISCUSSION

The district court may reconsider a magistrate judge's decision on a pretrial matter only "where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); FED. R. CIV. P. 72(a). A finding is clearly erroneous if "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v.*

*U.S. Gypsum Co.*, 333 U.S. 364, 395, 68 S. Ct. 525, 92 L. Ed. 746 (1948); *United States v. Isiofia*, 370 F.3d 226, 232 (2d Cir.2004). An order is contrary to law "when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Catskill Dev., L.L.C. v. Park Place Entrn't Corp.*, 206 F.R.D. 78, 86 (S.D.N.Y.2002) (citation omitted). "Pursuant to this highly deferential standard of review, magistrates are afforded broad discretion in resolving discovery disputes and reversal is appropriate only if their discretion is abused." *Universal Acupuncture Pain Servs., P.C. v. State Farm Mut. Auto. Ins. Co.*, No. 01CV7677, 2002 WL 31309232, at *1 (S.D.N.Y. Oct.15, 2002) (citing *Lanzo v. City of New York*, No. 96CV3242, 1999 WL 1007346, at *2 (E.D.N.Y. Sept. 21, 1999)). A party seeking to overturn a discovery order therefore bears a heavy burden. *See Com-Tech Assocs. v. Computer Assocs. Int'l*, 753 F.Supp. 1078, 1098-99 (E.D.N.Y. 1990), *aff'd*, 938 F.2d 1574 (2d Cir. 1991).

To be discoverable, the information a party seeks must be "relevant to any . . . claim or defense" but "need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." FED. R. CIV. P. 26(b)(1). However, the broad reach of discovery is not without limits and the court will dissallow requests where: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample

opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." FED. R. CIV. P. 26(b)(2)(c). "Thus, the first step in the process is deciding whether the requested material is discoverable, that is, whether it is relevant and not privileged. If it is, the Court still has considerable discretion to evaluate the practical realities of discovery, balancing the importance of the information against the burdens of production to decide whether fairness does or does not require production, and if so, on what terms." *Jones v. Goord*, 95CV8026, 2002 WL 1007614, at *6 (S.D.N.Y. May 16, 2002).

In *Hollander v. American Cyanamid Co*, 895 F.2d 80 (2d Cir. 1990), an ADEA age discrimination case, the Second Circuit reversed the district court's grant of summary judgment in favor of the defendant because of an earlier erroneous discovery ruling. During the discovery phase of the case, the district court refused to compel the defendant to respond to an interrogatory requiring identification of all management level employees over forty years old whose employment was terminated. *Hollander*, 895 F.2d at 82. The defendant objected to the interrogatory on the basis that it was vague and overbroad, seeking information pertaining to management employees throughout the company, and not only those working at the same facility as the

plaintiff. *Id.* at 84. The district court upheld the magistrate judge's finding that further discovery would be burdensome and irrelevant. *Id.*

The Second Circuit held that the plaintiff's discovery request was reasonable as it sought information regarding the termination of similarly situated persons—management personnel over the age of forty. *Id.* Importantly, the court noted that "an individual disparate treatment plaintiff may use statistical evidence regarding an employer's general practices at the pretext stage to help rebut the employer's purported non-discriminatory explanation" for employment action. *Id.* Also, the court found that the district court's discovery decision "deprived [the plaintiff] of evidence potentially helpful to his attempt to assemble such a quantum of circumstantial evidence supporting his argument of pretext." *Id.* at 85; *see also Jhirad v. TD Securities USA, Inc.*, 02CV7509, 2003 WL 1872654, at *2 (S.D.N.Y. April 10, 2003) ("The [*Hollander* court] held that company-wide demographic information might be relevant to show that defendant's non-discriminatory reasons for plaintiff's termination were pretextual."). Therefore, the court found that the plaintiff should have been entitled to the discovery he sought and reversed the district court's grant of summary judgement in favor of the defendant. *Hollander*, 895 F.2d at 85–86.

However, "*Hollander* is not the Circuit's last word on the use of 'other-act' or statistical evidence in discrimination cases. The Circuit has noted . . . that the comparisons underlying claims of disparate treatment must be carefully drawn."

*Jhirad* 2003 WL 1872654, at *4 (citing *Smith v. Xerox Corp.*, 196 F.3d 358, 370–71 (2d Cir.1999) for the proposition that because intent is a critical issue in employment discrimination cases "'only a comparison between persons evaluated by the same decision-maker is probative of discrimination.'").

In addition, in *Graham v. Long Island Rail Road*, 230 F.3d 34 (2d Cir. 2000), the Second Circuit explained that one method by which the plaintiff may raise an inference of discrimination is to show that she was treated less favorably than similarly situated employees outside of her protected class. *See Graham*, 230 F.3d at 39. The court provided guidance on when employees are similarly situated, stating that the plaintiff must establish that she was "similarly situated in all material respects to the individuals with whom she seeks to compare herself." *Id.* (internal quotations and citation omitted).

The *Graham* court explained that the district court should make an independent determination as to which factors are relevant to the determination of similarity among employees, stating that "what constitutes 'all material respects' . . . must be judged based on . . . whether the plaintiff and those he maintains were similarly situated were subject to the same workplace standards . . . . Hence, the standard for comparing conduct requires a reasonably close resemblance of the facts and circumstances of the plaintiff's and the comparator's cases, rather than a showing that both cases are identical." *Id.* at 40.

Balanced against the interest of a disparate treatment plaintiff in gathering statistical evidence is an employer's interest in maintaining the confidentiality of employee personnel files. *See Gavenda v. Orleans County*, 182 F.R.D. 17, 25 (W.D.N.Y. 1997) ("Production of such documents containing intimately personal information about individuals, most of whom are not parties to [a] lawsuit, is warranted only when the party seeking the information articulates a specific need for the information."); *Burka v. New York City Transit Authority*, 110 F.R.D. 660 (S.D.N.Y. 1986) (balancing the interests of avoiding disclosure of personal matters, independence in decision making, employees' reasonable expectations of privacy, and the burden of production with the interests favoring broad discovery and the ability to create reasonable limitations, and noting that a non-party with no stake in the litigation retains a greater expectation of privacy than a party).

However, there is no rigid rule prohibiting discovery of employee personnel files. In *Ladson v. Ulltra East Parking Corp.*, 164 F.R.D. 376 (S.D.N.Y. Feb. 6, 1996), the court ordered the defendants to produce the personnel files of employees similarly situated to a disparate treatment plaintiff. *Id.* at 378. The court rejected the defendants' contention that an enhanced showing of relevance was required in order to warrant production of personnel files. *Id.* at 377. Still, the court noted that "[l]egitimate privacy concerns exist with regard to personnel files. Such concerns, however, can be addressed by means short of restricting the scope of discovery." *Id.*

at 377 n.2. The court found that a protective order could appropriately remedy privacy concerns arising from discovery or personnel records. *Id.*

Thus, the Court must first determine which, if any, of the subject coaches are similarly situated to the plaintiff. Next, the Court must weigh the potential harm that might result from disclosure against the plaintiff's need for the material, and, if necessary, fashion an appropriate confidentiality order. *See Mitchell v. Fishbein*, 227 F.R.D. 239, 253 (S.D.N.Y. 2005) (ordering production of personnel records and imposing a confidentiality order); *Ladson*, 164 F.R.D. at 377 n.2; *Cobb v. Rockefeller University*, No. 90CV6516, 1991 WL 222125, at *2 (S.D.N.Y. Oct. 24, 1991) (directing production of certain personnel documents upon a finding that there was no reason to believe that plaintiff would not comply with a court order precluding her from disclosing the contents of the personnel files). *In camera* inspection of the files by the Court adds an additional layer of protection to ensure that only documents containing relevant matter are produced. *See Sidari v. Orleans County*, No. 95CV250A, 1997 WL 929814, at *2–3 (W.D.N.Y. July 23, 1997) (ordering production of four of seven requested personnel files following *in camera* inspection of the records).

Duck's motion seeks the production of approximately twenty-one personnel files, including:

(1) The complete personnel file of any and all persons who were hired to replace the Plaintiff as Coach of the Girls Field Hockey Team;

(2) the complete personnel filed for any and all persons who were hired to coach the Girls Field Hockey Team after 2002;

(3) The complete personnel file for Ms. Britt, including but not limited to any documents reflecting her qualifications, educational background, prior experience, certifications and job description for Coach of the Girls Field Hockey Team;

(4) The complete personnel file for Ms. Pennino, including any documents pertaining to her coaching the Girls Field Hockey Team that may not be contained in her personnel file;

(5) The complete personnel file for Ms. D'Amara, including any documents pertaining to her coaching the Girls Field Hockey Team that may not be contained in her personnel file;

(6) The complete personnel file for Mr. Thomas Putnam, including any documents pertaining to his coaching the Boys Cross Country Team and Varsity Track and Field that may not be contained in his personnel file;

(7) The complete personnel file for Mr. Robert Conlin, including any documents pertaining to his Coaching the Varsity Volley Ball Team that may not be contained in his personnel file;

(8) The complete personnel file for Mr. Al Desdario, including any documents pertaining to his Coaching the Varsity Volley Ball Team that may not be contained in his personnel file;

(9) The complete personnel file for Mr. Joseph Dessi, including any documents pertaining to his Coaching the Foot Ball Team and Girls Track and Field that may not be contained in his personnel file;

(10) The complete personnel file for Ms. Elizabeth Tucci, including any documents pertaining to her Coaching the Girls Field Hockey Team that may not be contained in her personnel file;

(11) The complete personnel file for Ms. Elizabeth Lagadinos, including any documents pertaining to her Coaching the Girls Field Hockey Team, Volley Ball and Softball that may not be contained in her personnel file;

(12) The complete personnel file for Mr. Salvatore Gerbino, including any documents pertaining to his Coaching the Varsity Softball team that may not be contained in his personnel file;

(13) The complete personnel file for Jeffery Koustantanou, including any documents pertaining to his Coaching the Junior

Varsity Football Team that may not be contained in his personnel file;

(14) The complete personnel file for Eric Mass, including any documents pertaining to his Coaching the Varsity Football Team that may not be contained in his personnel file;

(15) The complete personnel file for Edward Miller, including any documents pertaining to his Coaching the Junior Varsity Wrestling Team that may not be contained in his personnel file;

(16) The complete personnel file for Sean Neimeth, including any documents pertaining to his Coaching the Middle School Wrestling Team that may not be contained in his personnel file;

(17) The complete personnel file for John Pulianos, including any documents pertaining to his Coaching the Varsity Boys Soccer Team that may not be contained in his personnel file;

(18) The complete personnel file for Michael Reilly, including any documents pertaining to his Coaching the Girls Varsity Basket Ball and Track and Field Teams that may not be contained in his personnel file;

(19) The complete personnel file for Kevin Rowett, including any documents pertaining to his Coaching the Varsity Baseball Team that may not be contained in his personnel file;

(20) The complete personnel file for Mr. Donald Slingerland, including any documents pertaining to his coaching the Girls Track and Field Teams that may not be contained in his personnel file; and

(21) The complete personnel file for the former Superintendent of Schools Edward Reilly.

(Plaintiff's First Request for the Production of Documents, Sept. 27, 2007).

Britt and Pennino are the individuals who were awarded the coaching position that the plaintiff sought. The plaintiff asserts that their personnel records are relevant because they may contain applications that will establish whether they applied for the position before September 13, 2004, the date on which the plaintiff contends that she was recommended for the position by the head coach. In addition, the plaintiff

12

contends that these files will tend to show that Britt and Pennino were less qualified than she for the coaching position, including their possible lack of CPR and First Aide training. In response, the defendants state that they have already provided the dates of birth, employment histories, and CPR and First Aide certifications to the plaintiff. Further, the defendants assert that because no defense concerning inferior qualifications of the plaintiff has been raised, the qualifications of Britt and Pennino are not in issue.

In addition, the plaintiff requests the personnel file of Elizabeth Tucci, the person taking over the coaching position from Britt and Pennino in 2005. The plaintiff asserts that because Tucci obtained leave from her teaching position in the District in 2004, she was technically outside the District when she was appointed coach in 2005. The plaintiff contends that such information cuts directly against the defendants' contentions that preference must be awarded to faculty inside the District. Similarly, the plaintiff states that D'Amara was outside of the District when she was awarded a coaching position. Finally, the plaintiff contends that the personnel files of Tucci and D'Amara will establish their ages in comparison to the plaintiff's age at the time she was denied the coaching position.

Conversely, the defendants state that the plaintiff has already been provided with the dates of birth and experience levels of D'Amara and Tucci in response to "Plaintiff's First Set of Interrogatories." Further, the defendants contend that the

plaintiff can use other discovery devices to gather information about these coaches and their confidential personnel files are not probative to Plaintiff's claims because these individuals are not similarly situated to the plaintiff.

In connection with her request for the personnel files of Conlin, Dessi, Slingerland, Manfre, Putnam, and Desdario, the plaintiff asserts that information regarding their coaching positions is relevant because they are all retired teachers, some from the Port Jefferson School District, and some from other school districts, who were allowed to coach after their retirement. In addition, the plaintiff states that Conlin, Slingerland, Putnam, and Desdario worked for the District prior to retirement, but under the defendant's theory of the case would be considered outside of the District upon retirement. The plaintiff states that their files are relevant to determine if she was treated differently than persons not in her protected class and to determine if they were the only persons vying for the positions they were awarded. Further, the plaintiff contends that Manfre and Dessi were retired teachers from other districts, and thus outside the District, when they received coaching positions in the Port Jefferson School District.

In addition, the plaintiff asserts that the personnel files of Gerbino, Koutsantanou, Mass, Neimeth, Pulino, Michael Riley, Miller, and Rowett are relevant and discoverable because they, too, were all out of District teachers, who were awarded coaching positions within the District. The plaintiff states that their

14

personnel files would likely provide comparative evidence in the form of applications, experience, and qualifications, and whether they replaced or were chosen over any teachers inside the District. Finally, the plaintiff states that these records could yield evidence of whether these male coaches were subjected to the same requirements **as** their female counterparts.

The defendants state that the identity, age, and employment status of these two groups of individuals has already been provided to the plaintiff and production of their personnel records is not required because they are not individuals similarly situated in all material respects to the plaintiff. With regard to the retired teachers, the defendants contend that the plaintiff did not work for the District for the two years prior to 2004. Therefore, she has no teaching history for those years. The defendants assert that the information contained in the files regarding the teaching experience of these individuals in the years preceding their appointments is, therefore, not relevant to the plaintiff's claims.

Finally, the plaintiff seeks production of the personnel file of former School Superintendent, Edward Reilly. The plaintiff asserts that Reilly's personnel file will establish that he had policy making authority within the District and may also contain reprimands, complaints, and warning letters concerning allegations of discriminatory treatment of other employees. The defendants respond first that any information regarding Reilly's authority in the District should be obtained through deposition, not

by searching his personnel file.  Further, the defendants contend that a search for reprimands, complaints, and warning letters in Reilly's confidential personnel file is nothing more than a fishing expedition as the plaintiff has already been provided with all prior lawsuits and/or formal complaints filed by individuals similarly situated to the plaintiff.

The Court finds that the plaintiff is similarly situated to (1) those individuals who were retired from the District and were offered or obtained new coaching positions following retirement, but not those individuals who continued in a coaching position that they held prior to retirement; and (2) those individuals who were "outside" the District, specifically those who were not faculty at the District, at the time they were offered or obtained coaching positions with the District.  The defendants are directed to produce all employment records concerning these individuals to the Court for *in camera* inspection to determine whether disclosure is necessary.  Further, the defendants are directed to produce the personnel records of Britt and Pennino, especially including the dates on which they were recruited to Coach the Middle School Girls Field Hockey Team, and the dates on which they formally applied for and were awarded the position, to Judge Wall for *in camera* inspection to determine whether disclosure is necessary.

With respect to the personnel file of former Superintendent Edward Reilly, the Court affirms Judge Wall's determination that this information is protected from

disclosure, especially in light of the other discovery tools available to the plaintiff.

### III. CONCLUSION

For the foregoing reasons, it is hereby:

ORDERED, that the defendants are directed to produce to Judge Wall for *in camera* inspection, within 30 days of the date of this Order, the employment records of: (1) those individuals who were retired from the District and were offered or obtained new coaching positions following retirement; and (2) those individuals who were "outside" the District, specifically those who were not faculty at the District, at the time they were offered obtained coaching positions with the District; and it is further

ORDERED, that defendants are directed to produce to Judge Wall for *in camera* inspection, within 30 days of the date of this Order, the employment records for Britt and Pennino, especially including the dates on which they were recruited to coach the Middle School Girls Field Hockey Team, and the dates on which they formally applied for and were awarded the position; and it is further

ORDERED, that Judge Wall's discovery order is affirmed in all other respects.

**SO ORDERED.**
Dated: Central Islip, New York
        May 14, 2008

                                         */s/ Arthur D. Spatt*
                                         ARTHUR D. SPATT
                                         United States District Judge